[Cite as *State v. Risch*, 2011-Ohio-3633.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO.  16-10-14

      v.

MATTHEW KEITH RISCH,                  O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Wyandot County Common Pleas Court
Trial Court No. 09-CR-0080

Judgment Affirmed

Date of Decision:   July 25, 2011


APPEARANCES:

    *Scott B. Johnson*  for Appellant

    *Jonathan K. Miller*  for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Matthew K. Risch ("Risch") brings this appeal from the judgment of the Court of Common Pleas of Wyandot County finding him guilty of multiple sex offenses and sentencing him to a total prison term of 51 months. For the reasons set forth below, the judgment is affirmed.

{¶2} On September 22, 2009, the Wyandot Grand Jury issued an indictment against Risch charging him with eleven offenses: 1) gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree; 2) sexual imposition in violation of R.C. 2907.06(A)(4), a third degree misdemeanor; 3) sexual imposition in violation of R.C. 2907.06(A)(4), a third degree misdemeanor; 4) gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree; 5) sexual imposition in violation of R.C. 2907.06(A)(4), a third degree misdemeanor; 6) public indecency in violation of R.C. 2907.09(A)(1), a fourth degree misdemeanor; 7) public indecency in violation of R.C. 2907.09(A)(3), a third degree misdemeanor; 8) sexual imposition in violation of R.C. 2907.06(A)(4), a third degree misdemeanor; 9) gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; 10) gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; and 11) gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. Risch was arraigned on September 24, 2009, and entered pleas of

not guilty to all counts. Eventually, counts ten and eleven were severed for purposes of trial. A jury trial was held on counts one through nine on October 20 and 21, 2010. The jury returned verdicts of not guilty on counts five, six and seven, and guilty on counts one, two, three, four and eight. The jury was unable to return a verdict as to count nine.

{¶3} On November 4, 2010, Risch agreed to enter a no contest plea to an amended count ten, a charge of gross sexual imposition which would become a fourth degree felony. In exchange for the no contest plea, the State agreed to dismiss counts nine and eleven. A sentencing hearing and a sexual offender status hearing were held on December 7, 2010. The trial court found Risch to be a tier II offender and sentenced him to a total prison term of 51 months. Risch appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**[Risch's] conviction was neither supported by the sufficiency nor manifest weight of the evidence.**

### Second Assignment of Error

**The counsel for [Risch] provided ineffective assistance of counsel.**

{¶4} In the first assignment of error, Risch alleges that the convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

> **Sufficiency of the evidence is a test of adequacy used to "determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." \* \* \* A conviction based on insufficient evidence constitutes a denial of due process, and the defendant may not be recharged for the offense. \* \* \* In reviewing a claim under the sufficiency of the evidence standard, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." \* \* \***

*State v. Alvarado*, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶23 (citations omitted).

{¶5} Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.

> **Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"**

*State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 514 (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

-4-

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

{¶6} In this case, Risch was convicted of six counts. The first count of the indictment alleged that Risch had sexual contact with TNF, who was fifteen years old at the time, and that he used force or the threat of force to compel her to engage in the sexual contact. In the alternative, the Grand Jury also indicted Risch for one count of sexual imposition for the same contact with TNF. "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). To prove a claim of gross sexual imposition as charged in count one, the State had to prove that Risch caused TNF to have sexual contact with him and that he compelled her to submit by force or the threat of force. R.C. 2907.05(A)(1). Count two charged him with sexual imposition, which required the State to prove that Risch caused TNF to have sexual contact with him and that she was

between the ages of thirteen and sixteen at the time and that he was older than eighteen years of age.  R.C. 2907.06(A) (4).

{¶7} It was undisputed that at the time in question, Risch was twenty-nine years of age.  It was also undisputed that TNF was fifteen years of age.  During the trial, TNF testified as follows.

**Q.   What happened next?**

**A.   We started playing Marco Polo and we were all in different areas and [Risch] came towards me and he started grabbing my wrist and he pulled my wrist down to his private area.**

**Q.   What is his private area?**

**A.   His penis.**

**Q.   Did your hand touch his penis?**

**A.   The first time it did not, but the second time it did.**

**Q.   How would you describe his penis?**

**A.   It was erect.**

**Q.   Did you touch his penis the first time?**

**A.   No.**

**Q.   What did you feel, if anything?**

**A.   I felt the top of his swim trunks like the part is supposed (sic) to be around your waist.  I felt it down where it shouldn't have been.**

**Q.   Meaning his penis was exposed?**

**A.   Yeah.**

**Q.   And tell me what hand he grabbed?**

**A.   I believe it was my right.**

**Q.   Now, did you willingly put your right hand on his penis?**

**A.   No, I was pulling away the whole time.**

**\* \* \***

**Q.   So there were two separate times that he pulled down, that he pulled your hand down towards his private parts?**

**A.   Within a few seconds, yes.**

**Q.   The second time you touched his erect penis?**

**A.   Yes.**

**Q.   Did you do that willingly?**

**A.   No.**

**Q.   Were you joking around?**

**A.   I had thought we were joking around, but when I felt that I was kicking and pulling away and when I did that he started swimming towards [DRM].**

Tr. 101-102. Viewing this testimony in a light most favorable to the State, there is

sufficient evidence to support a conviction on either gross sexual imposition

and/or sexual imposition.[1]  As to the manifest weight of the evidence, Risch does not point to any evidence showing that her testimony is not credible.  Instead, he merely argues that the other witnesses did not testify to this event.  This does not weigh heavily against conviction.  Thus, the convictions on counts one and two are not against the manifest weight of the evidence.

{¶8} In count three, Risch allegedly engaged in sexual contact with DRM, who was fifteen years of age at the time.  The State only had to prove that Risch, who was 29 years old, touched DRM in a sexual manner and that she was between the ages of thirteen and sixteen.  R.C. 2907.06(A)(4).  The basis for this claim was that Risch pulled up the bottom of DRM's bikini and struck her bare bottom with his palm.  DRM testified as follows.

> **Q.  And you said [Risch] pulled up your bathing suit.  How did he do that?**
>
> **A.  He was standing over top of me and lifted up my bottoms.**
>
> **Q.  Turned it, gave you a wedgie or turned it into a thong?**
>
> **A.  Yes.**
>
> **Q.  Then what did he do?**
>
> **A.  He started smacking my butt.**
>
> **Q.  With what?**

---

[1]  Since these counts arose from the same act, the convictions merged prior to sentencing and Risch was only sentenced on count one.

**A. His hands.**

**Q. Was your butt bare at that point in time where he struck you?**

**A. Yes, it was.**

**Q. Okay. What happened next?**

**A. I told him to stop and I rolled over and then got back into the water.**

Tr. 141-142. TNF and MRF also testified that Risch was slapping DRM's bottom. Tr. 127, 169. Viewing this evidence in a light most favorable to the State, the evidence is sufficient to support a conviction for sexual imposition as set forth in count three of the indictment. As to the manifest weight of the evidence, Risch does not point to any evidence showing that DRM's testimony is not credible. He merely argues that the other witnesses did not testify that this happened. However, they did not testify that it did not happen. This does not weigh heavily against conviction. Thus, the conviction on count three is not against the manifest weight of the evidence.

{¶9} Count four charged Risch with gross sexual imposition by removing MRF's bikini bottom, attempting to force her legs apart and groping her breast, a violation of R.C. 2907.05(A)(1). MRF was fourteen years of age at the time. MRF testified as follows.

**A.** We were in the water and [TNF] pointed out [Risch's] shorts weren't on and then he grabbed my – he grabbed me and took my bottoms off. I went up and put my athletic shorts on. Then I put his swimming trunks over them.

**Q.** * * * [MRF], you just told us that [Risch] pulled off your bathing suit bottoms; is that right?

**A.** Yes.

**Q.** [MRF], I want you to take a deep breath. No, I mean really seriously take a deep breath. What type of bottoms were you wearing?

**A.** I was wearing my sister's. They were green and they were just normal bottoms.

* * *

**Q.** Did you give him permission to [remove the swim suit bottom]?

**A.** No.

**Q.** So were you naked from the waist down?

**A.** Yes.

**Q.** Were you wearing something on your top?

**A.** Just – no, just my top.

**Q.** Yeah. What type of top was it?

**A.** It was a light blue halter one that tied in the back and on top.

* * *

**Q.   Before we move onto another exhibit, what happened to Exhibit 4, the bikini bottoms, after [Risch] pulled them off you?**

**A.   He pulled them on himself.**

**\* \* \***

**Q.   Okay.  Now [Risch] has removed your bottoms and you are half naked.  What did you do?**

**A.   Went back up on shore.  I put my athletic shorts on.  Then I put his swimming trunks on over mine since he took my bottoms.**

**Q.   Where did you find his swimming trunks?**

**A.   They were in the water and I grabbed them after he took my bottoms.**

**Q.   So you are up on the beach; is that right?**

**A.   Yes.**

**\* \* \***

**Q.   What happened next?**

**A.   He came up and he took off his shorts, his swimming trunks and my shorts.  I was sitting there like that and he was opening, like trying to open my legs and he was and he grabbed my boob and he was ripping my top.**

**\* \* \***

**Q.   Just so the record is clear, while [Risch] is trying to spread your legs apart, what else was he doing?**

**A.   He was – he grabbed my boob.**

-11-

**Q. You are indicating your left breast?**

**A. Yes.**

**Q. What did he grab it with?**

**A. His right hand.**

**Q. Did you try to fight him off?**

**A. Yes, I was trying to push him away.**

**Q. Did you say anything?**

**A. I was calling for TNF and DRM.**

**Q. And he was trying to remove your top?**

**A. I don't know what he was doing. He was just touching me. I don't know if he was trying to take my top off or not.**

Tr. 170-175. DRM testified that she heard MRF scream for Risch to stop and to get off of her. Tr. 144. She testified that she saw MRF lying on the beach without a bikini bottom on and with Risch on top of her trying to untie MRF's top. Tr. 145. Viewing this evidence in a light most favorable to the State, the evidence is sufficient to support a conviction for gross sexual imposition as set forth in count four of the indictment. As to the manifest weight of the evidence, Risch does not point to any evidence showing that MRF's testimony is not credible. He does not point to any evidence that weighs heavily against conviction. Thus, the conviction on count four is not against the manifest weight of the evidence.

**{¶10}** Finally, Risch was convicted on amended count ten, attempted gross sexual imposition, a felony of the fourth degree. This conviction occurred after Risch entered a no contest plea. The effect of a no contest plea is that Risch has admitted the facts of the indictment. Crim.R. 11(B)(2). In the plea agreement, Risch agreed to the following amendment to count ten of the indictment.

> **On or about August 2005 through September 2006 at Wyandot County, Ohio, [Risch] did purposely or knowingly, and with sufficient culpability for commission of a violation of Section 2907.05(A)(4) of the Revised Code of Ohio, engage in conduct that, if successful, would constitute or result in a violation of Section 2907.05(A)(4) of the Revised Code of Ohio, to wit: the said [Risch] on or about August 2005 through September 2006 at Upper Sandusky, Wyandot County, Ohio, purposely or knowingly engaged in conduct that, if successful, would have constituted or resulted in "sexual contact," as defined in Section 2907.01(B) of the Revised Code of Ohio, with KSS to wit: the touching of the pubic region of KSS for the purpose of sexually arousing or gratifying either person, and KSS was not his spouse, and KSS (D.O.B. 12/03/1999) was less than thirteen years of age, whether or not he knew the age of KSS, in violation of Section 2923.02(A) and Section 2907.05(A)(4) of the Revised Code of Ohio, Attempted Gross Sexual Imposition, a felony of the fourth degree, contrary to the form and the statute in such case made and provided and against the peace and dignity of the State of Ohio.**

Plea Agreement, 4. The admitted facts are sufficient to support the conviction on the amended count ten. The facts are also not against the manifest weight of the evidence. Having found that the verdicts on all counts are supported by sufficient

evidence and are not against the manifest weight of the evidence, the first assignment of error is overruled.

{¶11} Risch argues in the second assignment of error that he was denied effective assistance of counsel. "Reversal of convictions on ineffective assistance requires the defendant to show 'first that counsel's performance was deficient and, second that the deficient performance prejudice the defense so as to deprive the defendant of a fair trial.'" *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 105, 772 N.E.2d 81. The defendant must show that there was a reasonable probability that but for counsel's error, the result of the trial would have been different. Id. at ¶ 108. *State v. Baughman*, 3d Dist. No. 1-10-34, 2010-Ohio-4951.

{¶12} Here, Risch claims that his counsel was ineffective because he did not question the witnesses as fully as it was possible to do so and that counsel did not fully use all of the taped interviews to support the impeachment of the State's witnesses. Risch also claims that defense counsel erred by not bringing in the absence of his DNA in MRF's bikini bottom that he allegedly wore or by bringing in the transcripts of the texts that the girls were sending at the time of the events at issue. This court notes that although Risch raises these issues, there is nothing in the record to answer the various questions raised by Risch in his brief. For example, there is nothing to show what the results of the DNA test was or what the texts contained. A review of the record indicates that Risch's trial counsel did

-14-

cross-examine the State's witnesses, did raise inconsistencies in their various versions of events, and did present a defense for Risch, including Risch's testimony. The issues raised by Risch now are simply speculation as to what the evidence might have shown, an assumption that it would have been beneficial to Risch's case and then further speculation as to what the effect on the jury might have been. The record does not reveal that there was a reasonable probability that but for counsel's alleged error, the result would have been different. Thus, the second assignment of error is overruled.

{¶13} Having found no error prejudicial to the defendant, the judgment of the Court of Common Pleas of Wyandot County is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. concurs in Judgment Only.**
**SHAW, J., concurs.**

**/jlr**