The STATE of Ohio, Appellee,

v.

BARKER, Appellant.

[Cite as *State v. Barker*, 191 Ohio App.3d 293, 2010-Ohio-5744.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23691.

Decided Nov. 24, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellee.

P.J. Conboy II, for appellant.

Brogan, Judge.

{¶ 1} On the night of September 30, 2006, Shelly Turner asked her mother, Freda Ann Howard, to watch her two young sons while she went with Harold Barker, her fiancé, to Shag's Bar for a drink. Her mother agreed, and Turner, taking with her only an ATM card, left. That was the last time Howard saw her daughter.

{¶ 2} Later that night, Barker returned to Howard's home alone. He told Howard that as he and Turner were leaving Shag's, a man drove up in a gray Grand Am and called out, "Hi, Shelly," and Turner replied, "Hi Bill." Turner went over to the car and began talking with "Bill." After a couple minutes, Barker said, he asked Turner whether she was walking or riding home. According to Barker, Turner walked over to him, calmly took off her engagement ring, and handed it to him. She then walked back to the car, got in, and "Bill" drove away. That was the last time Barker says he saw Turner.

{¶ 3} No one has seen or heard from Turner since that night in 2006. Nor, despite a broad search by police with cadaver dogs, has her body ever been found.

{¶ 4} It was not until 2009 that Barker was indicted for Turner's murder. He was charged with felonious assault causing serious physical harm, in violation of R.C. 2903.11(A)(1); felony murder, in violation of R.C. 2903.02(B); and tampering with evidence, in violation of R.C. 2921.12(A)(1). At trial later that year, the state presented the testimony of two witnesses who both said that Barker had confessed to them that he killed Turner. A jury found him guilty of all three offenses. And the trial court sentenced Barker to prison—eight years for felonious assault, 15 years to life for felony murder, and five years for tampering with evidence—for a total of 28 years to life.

{¶ 5} Barker appeals his conviction and sentence.

## I

{¶ 6} Barker assigns two errors to the trial court. In the first assignment of error, he argues that the court erred by convicting him. And in the second assignment of error, he contends that felonious assault and felony murder are allied offenses, so he could not be convicted for both, and the court should have merged them for sentencing purposes.

### A. First Assignment of Error

{¶ 7} "The trial court erred in convicting appellant of felonious assault, felony murder and tampering with evidence."

{¶ 8} Barker argues three reasons why his convictions are erroneous: (1) the court admitted his confessions in violation of the corpus delicti rule, (2) the convictions are not supported by sufficient evidence, and (3) the convictions are contrary to the manifest weight of the evidence.

## 1. The corpus delicti rule is satisfied

{¶ 9} Barker contends that the trial court should not have admitted his confessions, because the corpus delicti rule had not been satisfied. This rule of evidence says that before a defendant's confession to an offense may be admitted at trial, some evidence must already have been admitted, independent of the confession, that tends to establish the corpus delicti of the offense. *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, at paragraph 1b of the syllabus ("There must be some evidence in addition to a confession tending to establish the corpus delicti, before such confession is admissible"); see *State v. Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, at ¶ 71 (To satisfy the corpus delicti rule "the state's evidence * * * must 'tend to prove'" the corpus delicti). Originally, "[t]he *corpus delicti* rule was formed to prevent the conviction and punishment of persons who confessed to murdering someone who was never in fact murdered." *State v. Nobles* (1995), 106 Ohio App.3d 246, 262–263, 665 N.E.2d 1137. But now the rule "applie[s] to all crimes." Id. at 263, 665 N.E.2d 1137. The Ohio Supreme Court has said, however, that the corpus delicti rule is not to be applied "'with a dogmatic vengeance,'" *Gabriel* at ¶ 58, quoting *Edwards* at 36, 3 O.O.3d 18, 358 N.E.2d 1051, as the court believes that the rule has "limited utility." *State v. Black* (1978), 54 Ohio St.2d 304, 308, 8 O.O.3d 296, 376 N.E.2d 948, citing *Edwards*, at 35–36, 3 O.O.3d 18, 358 N.E.2d 1051 ("Considering the revolution in criminal law of the 1960's and the vast number of procedural safeguards protecting the due-process rights of criminal defendants, the corpus delicti rule is supported by few practical or social-policy considerations. This court sees little reason to apply the rule with a dogmatic vengeance"). "The corpus delicti of a crime is the body or substance of the crime." *Edwards* at paragraph 1a of the syllabus. The body of a crime usually includes two elements: "(1) the act and (2) the criminal agency of the act." Id.

{¶ 10} The corpus delicti rule imposes on the evidence a rather low standard. See *Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, at ¶ 58. The evidence "of itself, need not be equal to proof beyond a reasonable doubt nor even make a prima facie case." *Black*, 54 Ohio St.2d 304, 8 O.O.3d 296, 376 N.E.2d 1137, at the syllabus. Furthermore, "the evidence need not be direct but, rather, may be circumstantial." *Gabriel* at ¶ 58, citing *State v. Nicely* (1988), 39 Ohio St.3d 147, 152, 529 N.E.2d 1236. Under the standard, the admitted evidence is sufficient if it "'tends to prove some material element of the crime

charged.'" *Black* at 307, quoting *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038, at paragraph two of the syllabus.

{¶ 11} Here, then, before Barker's confessions could be admitted at trial, some evidence must have been admitted that is independent of the confessions that tends to prove some material element of each offense. As we will explain in our review of the second alleged error, the felony-murder charge here incorporates the charge for felonious assault, so Barker cannot be convicted of both; therefore, we need to examine the rule with respect only to felony murder. We conclude that the prior-admitted evidence satisfies the rule for both offenses.

{¶ 12} The evidence tends to prove that Turner is dead. The corpus delicti of murder is "(1) the fact of death and (2) the existence of the criminal agency of another as the cause of death." *State v. Manago* (1974), 38 Ohio St.2d 223, 67 O.O.2d 291, 313 N.E.2d 10, at paragraph one of the syllabus; see R.C. 2903.02(B) (defining felony murder) ("No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code"). The mere fact that a person is missing does not tend to prove that the person is dead. *Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, at ¶ 61. The evidence must also imply that a voluntary disappearance is unlikely. See id.

{¶ 13} The evidence here implies that it is unlikely that Turner disappeared voluntarily. Since she disappeared, her bank account has not been touched. Turner left behind all her personal possessions (e.g., purse, identification, cash), taking only a bank card. See *Nicely*, 39 Ohio St.3d at 155, 529 N.E.2d 1236 (leaving behind personal possessions may imply that the victim did not leave voluntarily). Turner had a good relationship with her mother and daughter and an especially close relationship with her two young sons. See id. (evidence of a victim's close relationships with her children, parents, and friends implies that voluntary disappearance is unlikely). There is no evidence that Turner viewed her life situation as one of hardship—just the contrary is true. Turner was in good health. She had been looking for a church to attend. Earlier on the day she disappeared, she bought pumpkins to carve into jack-o'-lanterns for her sons. Despite all this, no one has seen or heard from Turner in the three years since she disappeared. This evidence implies that Turner did not disappear voluntarily and tends to prove that she is in fact dead. So it satisfies the corpus delicti rule and opens the door to Barker's murder confessions.

{¶ 14} The evidence also tends to prove tampering with evidence. The fact that a victim's body has not been found "satisfies the corpus delicti of * * * tampering with evidence," since it suggests that the body was removed

from the area and was hidden. *Gabriel,* 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, at ¶ 73; see R.C. 2921.12(A)(1) (defining "tampering with evidence": "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation"). Here, despite an extensive search by police, Turner's body has not been found. Therefore the corpus delicti rule is also satisfied with respect to tampering with evidence.

{¶ 15} Although other explanations may be conceived to explain Turner's disappearance—for example, she has voluntarily disappeared with or been abducted by "Bill"—we reiterate the corpus delicti rule's low standard of proof: "the state's evidence merely must *'tend to prove'*" the corpus delicti—not prove it beyond a reasonable doubt or even establish a prima facie case. (Emphasis added.) *Gabriel,* 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, at ¶ 71. Given this low standard of proof, the Supreme Court's direction to apply the rule liberally, and the fact that the evidence here tends to prove some material element of each offense, we conclude that Barker's confessions were properly admitted because the corpus delicti rule was satisfied.

### 2. Sufficiency and manifest weight of the evidence

{¶ 16} The state presented two witnesses who each testified that Barker confessed to him or her that he had murdered Turner. Tonya Lee Ruby testified that during the week after Turner disappeared, Barker, whom she had not seen in several years, appeared one day on her doorstep. Ruby testified that Barker told her "he had been real sad, he had—didn't want to go back to prison."

{¶ 17} "Q Why was he sad? Did he tell you why he was sad?

{¶ 18} "A That he hurt somebody.

{¶ 19} "Q Is that what he said, 'I hurt somebody?' Did he tell you who he hurt?

{¶ 20} " * * *

{¶ 21} "A Shelly [Turner].

{¶ 22} " * * *

{¶ 23} "Q Okay. And did he tell you how it happened?

{¶ 24} " * * *

{¶ 25} "[A] He said that it was an accident, that he didn't mean to hurt her. He said that he hit her, he meant to slap her but he accidentally hit her and crushed her throat.

{¶ 26} " * * *

{¶ 27} " * * * I asked him why he didn't take her to the hospital. And he said it was too late, that she had drowned in all her blood.

{¶ 28} " * * *

{¶ 29} "A He [said he] put her on the ground and covered it with weeds and some bricks.

{¶ 30} " * * *

{¶ 31} "A He said he burnt [her clothes]."

{¶ 32} The other witness, Victor Turner (nothing in the record suggests a relation to the victim), also someone who had not seen Barker in several years, testified that soon after Turner disappeared, he ran into Barker on the street and Barker asked whether he wanted to get a drink. Victor agreed, and the two went to a bar, where they shot a few games of pool. Victor testified that during one game, Barker told him that he had killed his girlfriend. Victor also testified that Barker wanted him (Victor) to hook him (Barker) up with some heroin because, Barker told him, " 'I want to commit suicide because I've killed my girlfriend. I cut her up.' " Victor testified that when he later ran into Barker again, Barker told him that he had "chopped this girl up and put her in a barrel" and that nobody was going to find her because he had buried the barrel.

{¶ 33} A conviction is supported by sufficient evidence if "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. We conclude that after hearing evidence of Barker's confessions, any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt.

{¶ 34} "[W]eight of the evidence," on the other hand, "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" Id. at ¶ 25. When assessing the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Here, after considering all the evidence—Barker's confessions in particular—and seeing no credibility problems with the state's witnesses, we find no manifest miscarriage of justice that demands reversal. And

we are satisfied that the jury's verdicts are consistent with the weight of the evidence.

{¶ 35} The first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 36} "The trial court erred in its sentencing of appellant."

{¶ 37} Barker also contends that his felonious-assault and felony-murder offenses are allied offenses of similar import, so the trial court should not have convicted him of both under the merger doctrine, based on R.C. 2941.25. The state does not dispute that Barker committed the two offense at the same time and with the same animus. See R.C. 2941.25(B) ("Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them"). Nor does the state dispute that in several recent cases, we have held that felonious assault causing serious bodily harm is an allied offense of felony murder. See *State v. Alford*, Montgomery App. No. 23332, 2010-Ohio-2493, 2010 WL 2225420; *State v. Reid*, Montgomery App. No. 23409, 2010-Ohio-1686, 2010 WL 1511428; *State v. Scandrick*, Montgomery App. No. 23406, 2010-Ohio-2270, 2010 WL 2018110. Rather, the state urges us to reconsider.

{¶ 38} R.C. 2941.25 states that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). Two offenses are allied offenses of similar import "if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at paragraph one of the syllabus. In the Ohio Supreme Court case of *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, the defendant was charged and convicted of felonious assault causing serious bodily harm as well as the inchoate offense of attempted murder. The court held that "[f]elonious assault as defined in R.C. 2903.11(A)(1) is an allied offense of attempted murder as defined in R.C. 2903.02(B) and 2923.02." Id. at paragraph one of the syllabus. Our holdings that require the merger of felonious assault and the completed offense of felony murder rely on *Williams*. The state points out that the murder charge in *Williams* was attempted murder, not completed murder, and it contends that *Williams* therefore should not control. The actual taking of a life, argues the state, differs materially from the mere attempt to take a life. In both *Reid* and *Scandrick*, we acknowledged this

factual difference, yet we nevertheless held in those cases that *Williams* applied. We do so again here.

{¶ 39} The court's reasoning in *Williams* also applies to the completed offense of felony murder. Comparing the elements of attempted murder and felonious assault, the court said that "[i]n order to commit the offense of attempted murder as defined in R.C. 2903.02(B), one must purposely or knowingly engage in conduct that, if successful, would result in the death of another as a proximate result of committing or attempting to commit an offense of violence." *Williams,* 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, at ¶ 23. In the next sentence, the court said that "[s]ince felonious assault is an offense of violence, R.C. 2901.01(A)(9), the commission of attempted murder, as statutorily defined, necessarily results from the commission of an offense of violence, here, felonious assault." Id. In order to commit the completed offense of felony murder as defined in R.C. 2903.02(B), one must cause the death of another as a proximate result of committing or attempting to commit an offense of violence. Since felonious assault is an offense of violence, it follows that the commission of felony murder, as statutorily defined—like the commission of attempted felony-murder—necessarily results from the commission of an offense of violence, here, felonious assault. As we explained in *Reid,* "[t]he death would not have occurred without the felonious assault having been committed, and the felonious assault is itself a cause which in the natural and continuous sequence of events involved resulted in the victim's death," that is, death was a proximate result of the assault. *Reid,* 2010-Ohio-1686, 2010 WL 1511428, at ¶ 42. So under the merger doctrine, it is immaterial whether a defendant "purposely or knowingly * * * engage[s] in conduct that, if successful, would constitute or result in the offense," R.C. 2923.02(A), or the defendant's conduct actually constitutes or actually results in the offense. Just as in the case in which felonious assault and attempted murder are charged, the attempted murder would not have occurred without the felonious assault, so too in the case in which felonious assault and felony murder are charged, the felony murder would not have occurred without the felonious assault.

{¶ 40} Felonious assault causing serious bodily harm and felony murder therefore are allied offenses of similar import under R.C. 2941.25(A). The trial court erred by convicting Barker of both.

{¶ 41} The second assignment of error is sustained.

## II

{¶ 42} Having sustained the second assignment of error, we reverse and vacate Barker's sentences for felony murder, R.C. 2903.02(B), and felonious assault causing serious bodily harm, R.C. 2903.11(A)(1). This matter is remanded so that

the trial court can merge these two offenses and resentence Barker accordingly. Otherwise, the judgment of the trial court is affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DONOVAN, P.J., and FROELICH, J., concur.