[Cite as *State v. Cook*, 2013-Ohio-5081.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO.  1-11-66

    v.

NED L. COOK,                                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR20110032

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:    November 18, 2013

APPEARANCES:

    *Peter Galyardt*  for Appellant

    *Jana E. Emerick*  for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Ned L. Cook ("Cook") brings this appeal from the judgment of the Court of Common Pleas of Allen County finding him guilty of eleven counts and sentencing him to a total prison term of 60 years to life. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On March 17, 2011, the Allen County Grand Jury indicted Cook on eleven different charges. Doc. 3. Counts one through eight and count 10 alleged that Cook had raped children under the age of ten in violation of R.C. 2907.02(A)(1)(b), all felonies of the first degree. *Id.* Cook was also indicted in counts nine and eleven of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree. *Id.* On October 17-18, 2011, a jury trial was held.

{¶3} The State presented the testimony of six witnesses during its case-in-chief. The first witness was the victim, B.C. B.C. testified that she was seven years of age. Tr. 213. In response to the State's question, B.C. indicated that Cook used to live with her. Tr. 215. B.C. testified that she took a bath in the mornings before she went to school. Tr. 215. B.C. testified that after her bath, she would go into her mother's room with Cook. Tr. 216. Once she was in the room, B.C. would lie on the bed without her clothes. Tr. 217. Cook was the only person in the room with her. Tr. 217. B.C. testified that Cook was on the bed with her.

Tr. 219-20. B.C. testified that Cook was on top of her. Tr. 220. When asked what Cook did, B.C. testified that she did not know. Tr. 220. B.C. did indicate that Cook had touched her, but did not indicate where. Tr. 223. On cross-examination, B.C. indicated that before she came to court, her mother had told her not to answer the questions. Tr. 224-25.

{¶4} The second witness presented by the State was Glenn D. ("Glenn"). Glenn testified that he is related to B.C. and knew both her and Cook. Tr. 228-29. Glenn testified that one weekend in January 2011, B.C. spent the night at his home. Tr. 229. While watching a movie with a "bedroom scene", B.C. told Glenn that Cook gets on top of her like the characters in the movie. Tr. 230-31. Glenn testified that B.C. stated that Cook "touches his bad spot to my bad spot." Tr. 231. Shortly after that they took B.C. back to her mother. Tr. 232.

{¶5} The next witness was the mother of B.C. and C.F., Jodi F. ("Jodi"). Jodi testified that B.C. was born in 2004, and C.F. was born in 2008. Tr. 239. Neither B.C. nor C.F. were married. Tr. 240. Jodi testified that she had dated Cook "off and on for a good 6-6 ½" years. Tr. 240. They began living together, along with B.C. and C.F. in February of 2010. Tr. 241. In September of 2010, Jodi began working first shift, so worked from 6:00 a.m. until 6:00 p.m. Tr. 243. Cook watched the children while she worked. Tr. 244. Cook was responsible for getting B.C. ready for school during that time. Tr. 244.

{¶6} Jodi testified that on January 15, 2011, B.C. spoke to her on the telephone told her that Cook "had been messing with her." Tr. 244-45. Jodi testified that B.C. did not want to come home from her aunt and uncle's home where she was spending the weekend, so Jodi let her stay until the next day. Tr. 245. On January 16, 2011, B.C. refused to take a bath. Tr. 245. When questioned, she again stated that Cook had "been messing with [her]." Tr. 246. After B.C. made that statement, she returned to her prior activity and Cook got his coat and left. Tr. 246. Jodi then spoke to B.C. while attempting to get her into the tub. Tr. 247. Jodi testified that during that time B.C. was crying and told Jodi that Cook had rubbed her "butt and her kitty cat with his thing." Tr. 247. Jodi indicated that B.C. referred to her vagina as "kitty cat." Tr. 247. B.C. identified Cook's penis as "his thing." Tr. 247-48. Jodi then contacted the police. Tr. 248. Cook returned prior to the arrival of the police. Tr. 248. When Cook saw Jodi on the phone with the police, he immediately left the home again and did not return. Tr. 248-49.

{¶7} Once the police had the report, an investigation was conducted by children's services. Tr. 249. A caseworker, Seth Bowersock ("Bowersock") conducted an interview with C.F. Tr. 249. Bowersock subsequently had Jodi come back to the interview room where Bowersock had C.F. repeat what he had earlier stated to Bowersock to insure that he understood the young child correctly.

Tr. 249-50. Jodi testified that C.F. stated that Cook had put his penis into C.F.'s mouth. Tr. 250.

{¶8} On cross-examination, Jodi testified that she did not immediately call the police because she wanted to find more evidence. Tr. 258. At the time of the report, Jodi and Cook were no longer dating, though they did still live together. Tr. 259. Jodi indicated that the relationship ended because of Cook's talking to other women on the internet and to his wife.[1] Tr. 260. Jodi testified that Cook was involved with two or three other women. Tr. 260. She admitted that his talking to the other women upset her, but she still allowed him to live in the home. Tr. 260. Jodi testified that she had not seen any abnormal marks on B.C. when giving her a bath. Tr.263.

{¶9} Bowersock was the fourth witness presented by the State. Bowersock testified that he was employed as an investigator for the Allen County Children Service's Board. Tr. 273. Bowersock indicated that part of his job requires him to investigate all allegations of child abuse. Tr. 273-74. When he receives a report, he is required to speak with all caregivers in the home, see all children in the home, and to speak with the children if possible. Tr. 274-75. This requirement includes all children in the home, not just those who have allegedly been abused. Tr. 275. In January of 2011, he began working with this family after receiving a

---

[1] Cook was still married, but had separated from his wife. Ex. 3.

report that B.C. had been sexually abused. Tr. 274-75. While conducting that investigation, Bowersock attempted to speak with C.F. three or four times. Tr. 276. Before closing the case, Bowersock made one final attempt to speak with C.F. on February 16, 2011. Tr. 277.

{¶10} Bowersock took C.F. back into the interview room and began to discuss the difference between the truth and a lie. Tr. 278-79. Bowersock testified that C.F. did not do well and did not seem to understand the difference. Tr. 279. Bowersock then asked C.F. to tell him with whom C.F. lives. Tr. 280. C.F. responded "that his daddy was in jail." Tr. 280. When Bowersock asked C.F. to tell him about that, to which C.F. told him that "daddy put his pee-pee on his sister's pee-pee." Tr. 280. C.F. admitted that he had not seen this. Tr. 280. C.F. then volunteered "that his daddy put his pee-pee in his mouth and it tasted sour." Tr. 280. Bowersock then asked C.F. to tell him more and C.F. indicated that it happened one time while he was in the bathtub. Tr. 280. Using an anatomical drawing, C.F. identified the penis as the "pee-pee." Tr. 281-82. After speaking to C.F. alone, Bowersock asked Jodi to come back to the interview room and had C.F. repeat what he had said. Tr. 283. Jodi confirmed that he had heard C.F. correctly. Tr. 283.

{¶11} On cross-examination, Bowersock indicated that the interview with C.F. was not recorded in any way. Tr. 284. Bowersock again indicated that C.F.

did not understand "the rules" of the interview such as the difference between the truth and a lie. Tr. 285.

{¶12} The next witness for the State was Deana Lauck ("Lauck"). Lauck testified that she was employed at the time of trial as a patrol officer with the Lima Police Department. Tr. 304-5. Before March of 2011, Lauck was assigned to the Juvenile Investigative Services Bureau. Tr. 305. Lauck testified that she has received training in interviewing child victims. Tr. 306. She testified that with children, an officer must be very careful not to lead the witness. Tr. 306-7. Lauck testified that she interviewed B.C. on January 18, 2011. Tr. 307. During the interview, Lauck used an anatomical drawing to help learn how B.C. identified various body parts. Tr. 308-9. B.C. identified her vagina as "bad spot" or "kitty cat." Tr. 310. On January 24, Lauck conducted an interview with Cook. Tr. 311. The interview was conducted concerning the allegations made by B.C. Tr. 312. A recording was made of the interview and Lauck identified the DVD as the recording. Tr. 312. The video was then played for the jury. Tr. 313, Ex. 3.

{¶13} The video indicated that Cook was read his Miranda rights and agreed to waive them. Ex. 3. Cook then signed a written waiver during the interview. Ex. 6. While speaking with Lauck, Cook claimed that every time Jodi wanted him to leave the home, Jodi would tell him that B.C. was claiming he had touched her inappropriately. Ex. 3. Cook admitted that he watched the children

while Jodi worked. Ex. 3. Cook also testified that C.F. calls him dad. Ex. 3. Later in the video, Cook admitted that while they lived on Calumet Street in Lima, he touched B.C. in her vaginal area. Ex. 3 While still living at that location, Cook progressed to removing B.C.'s clothing and licking her vaginal area with his tongue with slight penetration. Ex. 3. Cook, Jodi, and the children moved to Elizabeth Street in Lima in May of 2010. Ex. 3. While living there he again licked B.C. in the vaginal area, penetrating her with his tongue. Ex. 3 These actions were repeated on two more occasions while they lived on Elizabeth Street. Ex. 3. The group moved to a residence on South Main Street of Lima in November of 2010. Ex. 3. Cook admitted to two more instances of licking and slight vaginal penetration with the tongue. Ex. 3 After those incidents, Cook admitted that he had progressed to rubbing her buttocks and vaginal area with his fingers and penis as well as licking her. Ex. 3. Cook admitted that his fingers slightly penetrated the vagina. Ex. 3.

{¶14} After the video of the first interview was shown, the State continued the questioning of Lauck. Lauck testified that at the conclusion of the first interview with Cook, he was arrested. Tr. 320. A second interview was conducted on February 28, 2011. Tr. 323. The second interview was done because of the allegation regarding C.F. Tr. 321. Although Lauck informed Cook of his rights and Cook waived his rights, he did not sign the written waiver. Tr.

322, Ex. 7. The video of the second interview was then played for the jury. Tr. 324, Ex. 4.

{¶15} During the second interview, Lauck informed Cook of his Miranda rights and Cook agreed to speak with her. Ex. 4. For the majority of the interview, Cook repeatedly denied that he had ever put his penis into C.F.'s mouth. Ex. 4. As the interview progressed, Cook admitted that he had thought about committing the act. Ex. 4. Cook later admitted that he permitted C.F. to touch Cook's penis. Ex. 4. Eventually, Cook admitted that C.F. had pulled his penis down and may have touched it to his lips. Ex. 4. This testimony eventually changed to an admission that C.F. had put his mouth around the tip of the penis. Ex. 4.

{¶16} The final witness for the State was Detective Steve Stechschulte ("Stechschulte"). Stechschulte testified that he was a detective with the Lima Police Department. Tr. 328. On March 1, 2011, Stechschulte conducted the third interview with Cook. Tr. 329. Stechschulte identified the third DVD as a copy of the interview. Tr. 330, Ex. 5. Stechshulte also testified that Cook had waived his rights during the interview and had signed a written waiver. Tr. 330, Ex. 8. Stechschulte admitted that although there were references to "some tearing and DNA", he did not have that evidence and he had no prior knowledge of the case before the interview. Tr. 330. He explained that in situations where there may be

trace evidence, the statement that there is physical evidence is a way to "help [the defendant] be truthful." Tr. 331. Stechschulte testified that this is an investigative technique. Tr. 331. Additionally Stechschulte testified that DNA evidence disappears over time and during showering. Tr. 332-33.

{¶17} Before the video was played, Stechshulte testified that he wanted to interview Cook again to address inconsistencies between B.C.'s statements and Cook's statements. Tr. 333. The third DVD was then played for the jury. Tr. 334, Ex. 5. In the third interview, Cook was questioned again concerning the allegations made by C.F. Ex. 5. Cook did not admit to anything new. Ex. 5.

{¶18} The jury returned verdicts of guilty on all counts including the specifications of the age. Doc. 111-121. The trial court immediately entered sentence. Doc. 124. On counts one through eight and count ten, the trial court sentenced Cook to serve fifteen years to life in prison. *Id.* On counts nine and eleven, Cook was sentenced to five years in prison. *Id.* The trial court ordered that counts one, two, and three be served concurrently to each other. *Id.* Counts four, five, six, and seven were ordered to be served concurrently to each other. *Id.* Counts eight and nine were ordered to be served concurrently to each other. *Id.* Counts ten and eleven were also ordered to be served concurrently to each other. *Id.* Each block of sentences was ordered to be served consecutively for a total sentence of sixty years to life in prison. *Id.* Cook filed his notice of appeal from

this judgment on November 15, 2011. Doc. 131. Cook raises the following assignments of error on appeal.

**First Assignment of Error**

**The trial court erred when it admitted hearsay testimonial statements during [Cook's] trial, in violation of his sixth amendment right to confrontation.**

**Second Assignment of Error**

**[Cook] was deprived of his right to due process when his trial attorney provided ineffective assistance of counsel.**

**Third Assignment of Error**

**The trial court erred and violated [Cook's] rights to due process and a fair trial when, in the absence of sufficient evidence and against the manifest weight of the evidence, it convicted him of multiple counts of rape and one count of gross sexual imposition against his girlfriend's daughter, and rape and gross sexual imposition against her son.**

**Fourth Assignment of Error**

**The trial court erred by imposing court costs without notifying [Cook] that failure to pay those costs may result in the court's ordering him to perform community service.**

{¶19} In the first assignment of error, Cook alleges that the trial court erred by admitting hearsay testimony. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "If, however, the statement is explicitly offered without reference to its truth, then under Evid.R.

801(C) it is not hearsay." *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, ¶23, 964 N.E.2d 442 (6th Dist.). "The trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶20} Cook makes two arguments within this assignment of error. The first is that the trial court erred by allowing a DVD of his interrogation because it contained the repeating of victim's statements by the officers while questioning Cook, which violated his right to confront the witness. Initially, this court notes that prior to trial Cook filed a motion to prohibit the State from introducing hearsay evidence. Doc. 51. This motion did not concern the DVDs. During the trial, Cook objected to Bowersock testifying to the statements made by C.F. Tr. 264-65. The trial court overruled the objection based upon Evid. Rule 807 and permitted Bowersock's testimony. Tr. 271. During the testimony of Lauck, Cook also objected. However, this objection came when Lauck was testifying to how she used the anatomical drawing to aid in her interview with B.C. Tr. 309. The only discussion on the record concerning the use of the DVDs was that the DVDs were edited to omit any mention of prior bad acts and that all three interviews

would otherwise be played in their entirety at the request of Cook. Tr. 295-303, 313-315. Cook did not object to any hearsay statements in the tape. In addition, Cook did not object to the admission of the DVD's. Tr. 338, 340. Thus the admission of the tapes are only reviewable under a plain error standard. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶86, 880 N.E.2d 31.

{¶21} A review of the first interview indicates that on multiple instances, the investigators stated what B.C. and C.F. had told them. However, the investigators indicated that they did not know if these statements were true and were asking Cook for his version of what happened. The statements were merely incidental to the interview and were not offered to prove the truth of the matter asserted. Since the statements were not offered to prove the truth of the matter asserted, but rather to provide context for Cook's confession, they are not hearsay statements by definition.

{¶22} The second argument raised by Cook was that the trial court erred by allowing the hearsay statement of C.F. through the testimony of Bowersock. As discussed above, Bowersock was interviewing C.F. as part of his investigation into the allegations of abuse against B.C. The statement made by C.F. is reviewed pursuant to Evidence Rule 807.

> **(A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any**

**act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:**

**(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.**

**(2) The child's testimony is not reasonably obtainable by the proponent of the statement.**

**(3) There is independent proof of the sexual act or act of physical violence.**

**(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.**

**(B) The child's testimony is "not reasonably obtainable by the proponent of the statement" under division (A)(2) of this rule only if one or more of the following apply:**

**(1)   The child refuses to testify concerning the subject matter of the statement or claims a lack of memory of the subject matter of the statement after a person trusted by the child, in the presence of the court, urges the child to both describe the acts described by the statement and to testify.**

**(2)   The court finds all of the following:**

**(a)   The child is absent from the trial or hearing;**

**(b)   The proponent of the statement has been unable to procure the child's attendance or testimony by process or other reasonable means despite a good faith effort to do so;**

**(c)   It is probable that the proponent would be unable to procure the child's testimony or attendance if the trial or hearing were delayed for a reasonable time.**

**(3)   The court finds both of the following:**

**(a)   The child is unable to testify at the trial or hearing because of death or then existing physical or mental illness or infirmity;**

**(b)   The illness or infirmity would not improve sufficiently to permit the child to testify if the trial or hearing were delayed for a reasonable time.**
**The proponent of the statement has not established that the child's testimony or attendance is not reasonably obtainable if the child's refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the statement for the purpose of preventing the child from attending or testifying.**

**(C) The court shall make the findings required by this rule on the basis of a hearing conducted outside the presence of the jury and shall make findings of fact, on the record, as to the bases for its ruling.**

Evid.R. 807.

{¶23} In this case Cook objected to the testimony of Bowersock concerning the statement of C.F. Tr. 264-65. The trial court then noted that a prior hearing had been held on this issue on August 31, 2011, and that Bowersock testified at that hearing. Tr. 265. The trial court entered its ruling finding the testimony admissible on October 6, 2011. Tr. 265, Doc. 93. The trial court then proceeded to restate the facts that arose from that hearing. The trial court noted that Bowersock spoke with C.F. on February 12, 2011. Tr. 266. Bowersock went over the rules of the interview and asked C.F. who lives with them. Tr. 267. Bowersock then testified that C.F. volunteered "out of the blue" that "my daddy puts his pee-pee in my mouth and it tastes sour." Tr. 267. This statement was later repeated to Jodi. Tr. 268. The trial court then stated the following.

**The Court has considered and did consider the following:**

**1.     Spontaneity – in this instance the dec – declaration made by [C.F.] came when asked who lived in his house. No one had mentioned [Cook]. [C.F.] said "My daddy's in jail." "Daddy put his pee-pee on my mouth and it's sour."**

**2.     Internal consistency of the statements – in this instance the statement made by the child was consistent with each other and did not any – any time contradict each other.**

**3.     The mental state of the child – the child was 3 years of age.**

**4.     The child's motive or lack of motive to fabricate – there does not appear to be any reason for the child to make the statements, other than it was true. Defendant was his mom's boyfriend and was in jail at the time of the disclosure.**

**5.    The child's use of terminology unexpected of a child of similar age – again, the child did not use the word "penis" instead [C.F.] said "Daddy put his pee-pee in my mouth and it's sour."**

**6.    The means by which the statement was elicited – the statement made by [C.F.] was spontaneous during the course of an interview when he was asked who he lives with.**

**7.    The lapse of time between the act and the statement – the statement was over a month after the last sexual assault by the defendant, according to the defendant's interview with law enforcement, which the court previously reviewed.**

**8.    The court finds that the child's testimony is not reasonably obtainable by the State.  In this instance the child is 3 years of age.  The defense has stipulated that the child is not competent to testify.  It is further unlikely the child would become competent to testify in a reasonable amount of time.  The court further finds that the child based upon his age and mental infirmity, would be unable to testify at trial because of the same and that the infirmity of the child would not improve sufficiently to permit the child to testify if the trial or hearing was delayed for a reasonable period of time.**

**9.    The child (sic) further finds that there is independent proof of the sexual act by the interview in which he was allowed – which he – Defendant admitted during the interview that he allowed C.F. to hold his penis on three (3) separate occasions and placed his penis in [C.F.'s] mouth.**

**10. The Court also finds the State has filed its motion more than ten (10) days prior to trial.**

**The court therefore finds that pursuant to Evidence Rule 807 and all constitutional guarantees that [Bowersock] is allowed to testify regarding the child-victim's statement.**

Tr. 268-271. A review of the record indicates that all of the trial court's findings of fact were supported by the evidence presented at the hearing outside of the presence of the jury. See Aug. 31, 2011, Hearing, Tr. 85-124. The trial court considered all of the factors set forth in Evidence Rule 807(A)(1). The testimony of C.F. was not obtainable due to the age of the victim and the mental infirmity resulting from his young age. Evid.R. 807(A)(2), (B)(3). The testimony was supported by the confession of Cook that his penis had been between C.F.'s lips. Evid.R. 807(A)(3). The record reveals that the State provided notice on July 21, 2011 to Cook of its intent to use the child's statement to Bowersock which is more than ten days prior to trial. Doc. 21. Finally, the trial court clearly set forth all of its findings of fact and conclusions of law on the record. Evid.R. 807(C). Thus, all of the requirements of Evidence Rule 807 were met making the statement not a hearsay statement pursuant to Evidence Rule 807.

{¶24} Cook also argues that the use of the hearsay statements is prejudicial because if the testimony had been excluded, the evidence would have been insufficient to corroborate Cook's confession.

> **The corpus delicti of an offense consists of the act and the criminal agency of the act. [*State v. Edwards*, 49 Ohio St.2d 31, 36, 358 N.E.2d 1051 (1976)]. Before a confession of a crime may be admitted at trial, the state must introduce evidence independent of the confession to establish the corpus delicti of the offense. See *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038, paragraphs one and two of the syllabus; see, also, *State v. Van Hook* (1988), 39 Ohio St.3d 256, 261, 530 N.E.2d 883.**

> **The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone."** *State v. Nobles* **(1995), 106 Ohio App.3d 246, 261–62, 665 N.E.2d 1137. Accordingly, "this rule does not require evidence, other than the confession, showing that the accused committed the crime but, rather, requires some evidence that a crime was, in fact, committed."** *State v. Hopfer* **(1996), 112 Ohio App.3d 521, 561, 679 N.E.2d 321.**
>
> **"The evidence presented need not be so strong that it is capable of persuading a factfinder on some element of the crime beyond a reasonable doubt."** *Nobles***, 106 Ohio App.3d at 262, 665 N.E.2d 1137. Nor must the evidence be "even enough to make it a prima facie case."** *Maranda***, 94 Ohio St. 364, 114 N.E. 1038, at paragraph two of the syllabus. Rather, "[i]t is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Id. The corpus delicti rule does not require evidence related to all elements of the crime.** *Van Hook***, 39 Ohio St.3d at 262, 530 N.E.2d 883. Furthermore, the evidence need not be direct but, rather, may be circumstantial.** *State v. Nicely* **(1988), 39 Ohio St.3d 147, 152, 529 N.E.2d 1236. Although the rule remains applicable, the Supreme Court has indicated that it need not be applied "with a dogmatic vengeance."** *Edwards***, 49 Ohio St.2d at 36, 3 O.O.3d 18, 358 N.E.2d 1051.**

*State v. Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, ¶57-58, 867 N.E.2d 474

(2d Dist.) (reversed on other grounds). The *corpus delecti* rule requires the State

to present some independent evidence of the criminal act and criminal agency, but

that burden is minimal. *State v. Van Hook*, 39 Ohio St.3d 256, 530 N.E.2d 883

(1988) and *State v. Brown*, 3d Dist. Union No. 14-08-11, 2008-Ohio-4649, ¶34.

*See also, State v. Edinger*, 10th Dist. Franklin No. 05AP-31, 2006-Ohio-1527;

*State v. Davis*, 11th Dist. Ashtabula No. 89-A-1458, 1990 WL 59208 (May 4,

1990) and *State v. Newberry*, 2d Dist. Montgomery No. CA10353, 1987 WL 29572 (Dec. 18, 1987).

{¶25} In *Edinger, supra*, the 10th District Court of Appeals addressed an issue similar to ours. The defendant was convicted of one count of rape and one count of gross sexual imposition with the victim being a two to three year old girl. *Id*. At the time of the offenses, the child resided with the defendant and was not married to him. *Id*. The child made comments to her father which caused him to call the police and take her to the hospital. *Id*. The appellate court found that this testimony was sufficient to meet the State's burden of establishing the *corpus delecti*. *Id.* at ¶32.

{¶26} In this case, there was no physical evidence of any sort to corroborate the confession of Cook. However, there was testimony by B.C. that Cook had touched her while she lay on the bed without clothing. Tr. 219-23. There was the testimony of Glenn that B.C. told him that Cook touched his bad spot to her bad spot. Tr. 231. Glenn also testified that B.C.'s statements caused him to tell her aunt who called Jodi. Tr. 231-32. Jodi also testified that B.C. repeatedly told her that Cook had "messed" with her. Tr. 245-47. Jodi testified that Cook resided with B.C. and that he would have been home alone when the acts allegedly occurred. Tr. 241, 244. Jodi further testified that B.C. was seven years of age and was not married to Cook. Tr. 239-40. When questioning B.C., Jodi was able to

learn details of specific acts which had occurred that caused her to contact the police. Tr. 247-248. The evidence is sufficient if it tends to prove an element of the crime. *State v. Barker*, 191 Ohio App.3d 293, 2010-Ohio-5744, ¶10, 945 N.E.2d 1107 (2d Dist.). The above testimony was sufficient to prove that a crime was committed, which is sufficient to satisfy the requirements of *corpus delecti* as to the offenses against B.C.

{¶27} As to C.F. there was again, no physical evidence to corroborate the confession of Cook. There was the testimony of Bowersock that C.F. told him that Cook had put Cook's penis into C.F.'s mouth. Tr. 280. Jodi testified that C.F. repeated the statement to her when she went back after the initial interview between Bowersock and C.F. Tr. 250. Jodi also testified that Cook resided with them, C.F. was three years of age, and that C.F. was not married. Tr. 239-41. This testimony was sufficient to satisfy the requirements of *corpus delecti* as to the offenses against C.F. Having found that there was no error in the admission of the evidence and that there was sufficient corroborating evidence to allow the admission of the confessions, the first assignment of error is overruled.

{¶28} In the second assignment of error, Cook claims that he was denied effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."** *State v. Hester* **(1976), 45**

**Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**

**On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; \*\*915 State v. Jackson, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905.

{¶29} Here, Cook claims that his trial counsel was ineffective for failing to object to the hearsay statements in the DVDs. As discussed above, the use of B.C.'s and C.F.'s statements during the police interviews were not used to prove the truth of the matter asserted. A review of the DVDs shows that the officers told Cook that this is what the children were saying, but that it may or may not be true. The officers indicated that they wanted to hear Cook's version of what happened. The statements were used to elicit a response from Cook, not to prove that the abuse had happened. The verification of the abuse came from Cook's confessions, not from the police repeating the statements made by the children. Since the

statements were not hearsay, trial counsel did not err in failing to object. Thus, the first step of the test for ineffective assistance of counsel is not met and we need not consider the second step. The second assignment of error is overruled.

{¶30} Cook claims in the third assignment of error that the verdict is against the sufficiency of the evidence and is against the manifest weight of the evidence. A claim of sufficiency of the evidence raises a due process question concerning whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶219, 954 N.E.2d 596 (citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541). "On review of the sufficiency of the evidence to support a criminal conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶34, 840 N.E.2d 1032 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

{¶31} Cook was charged with nine counts of rape in violation of R.C. 2907.02(A)(1)(b). To prove counts one through eight, the State was required to prove that Cook on or around the specified dates engaged in sexual conduct with B.C. and that she was less than thirteen years of age and not his spouse.

> **"Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between**

**persons regardless of sex; and without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.**

R.C. 2907.01(A). To prove count ten, the State was required to prove that Cook engaged in the above act with C.F. and that he was less than thirteen years of age and not his spouse. A specification that the victim was younger than ten years of age was also added to each of the rape counts.

{¶32} B.C. testified that at the time of trial, she was seven years of age. Tr. 213. Jodi testified that B.C. was not married. Tr. 240. Cook's confessed that on eight separate occasions he had engaged in sexual conduct with B.C. and that some part of his body, whether it be a finger or a tongue, slightly penetrated the vaginal opening. Ex. 3.

{¶33} Jodi testified that at the time of trial, C.F. was three years of age. Tr. 239. She also testified that C.F. was not married. Tr. 240. Bowersock testified that C.F. had told him that Cook had placed his penis in C.F.'s mouth. Cook admitted during the police interview that C.F. may have put the tip of Cook's penis into C.F.'s mouth and that he may have left it there for a few seconds. Ex. 4. Viewing this evidence in a light most favorable to the prosecution, there was sufficient evidence to support the eight rape convictions concerning B.C. and the one rape conviction concerning C.F. The evidence was also sufficient to support

the findings that the specifications applied in that both children were under the age of ten at the time of the offenses.

{¶34} In addition to the counts for rape, Cook was also indicted on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). These charges required the State to prove that Cook had sexual contact with B.C. and that he caused C.F. to have sexual contact with him, that they were not his spouse, and that they were under the age of thirteen at the time.

> **"Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.**

R.C. 2907.01(B). As discussed above, the undisputed evidence is that both B.F. and C.F. were under the age of thirteen and were unmarried when the alleged contact occurred. Cook admitted that the first incident occurred when he placed his hand on B.C.'s genitals. Ex. 3. After he finished touching her, he went to the bathroom and masturbated. Ex. 3. Cook also admitted that on one occasion he permitted C.F. to hold his penis for approximately 10 seconds while he thought about continuing the encounter and had sexual urges. Ex. 4 and 5. Viewing this evidence in light most favorable to the prosecution, the evidence is sufficient to support the convictions for gross sexual imposition as to B.C. and C.F.

{¶35} Cook also claims that the verdict is against the manifest weight of the evidence. "A reviewing court may find a verdict to be against the manifest weight

of the evidence even though legally sufficient evidence supports it." *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶76, 781 N.E.2d 980.

> **A reviewing court considering a manifest-weight claim "review [s] the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses."** *State v. Martin* **(1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. The question for the reviewing court is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction." Id. See** *Thompkins,* **78 Ohio St.3d at 387, 678 N.E.2d 541.**

*Id*. at ¶77. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Risch*, 3d Dist. Wyandot No. 16-10-14, 2011-Ohio-3633, ¶5 (quoting *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456).

{¶36} A review of the evidence in this case shows that Cook confessed to all of the charged offenses. This confession was played for the jury. The State presented additional witnesses that confirmed the statements made in the

-26-

confession as to opportunity. The age and marital status of the victims was not disputed. The State also presented witnesses who were able to testify that the victims have been consistent in their statements. B.C. herself took the stand. Although she did not provide details as to what had happened, she provided enough information to confirm what was stated in the confession.[2] The evidence presented does not weigh heavily against conviction and does not indicate that the jury lost its way. Thus, the verdicts are not against the manifest weight of the evidence. The third assignment of error is overruled.

{¶37} The fourth and final assignment of error alleges that the trial court erred by failing to notify Cook that the failure to pay court costs could result in him being required to perform community service. Cook requests that as a result of that failure by the trial court, this court should eliminate the requirement that Cook be required to perform community service if he fails to pay court costs. Appellant's Brief, 12. The State concedes that the trial court failed to properly notify Cook concerning the possibility of community control. Appellee's Brief, 20. However, the State argues that the proper remedy is to remand the matter for the limited purpose of correcting the error in the sentencing on court costs. *Id.* at 23.

{¶38} The imposition of court costs is governed by R.C. 2947.23.

---

[2] C.F. did not take the stand due to his young age making him an incompetent witness.

**(A)(1) In all criminal cases, including violation of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under [R.C. 2947.231], and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:**

**(a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.**

**(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed and each hour of community service performed will reduce the judgment by that amount.**

R.C. 2947.23.[3] The Ohio Supreme Court has held that the trial court must provide the required notice at sentencing and the failure to do so is subject to appellate review. *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423. "In R.C. 2947.23(A)(1), the General Assembly's use of the language 'at the time the judge * * * imposes sentence, the judge * * * shall notify' clearly registers an intent that this notice is mandatory and that a court is to provide this notice at sentencing." *Id*. at ¶10. The Court did not address what should happen when the matter was reviewed.

---

[3] This is the old version of the statute that was in effect at the time of sentencing. Since then, the statute has been amended three times.

{¶39} A review of the case law indicates that this district has not ruled on this issue since *Smith* and that the other districts are divided. The second and seventh districts have held that the failure to notify a defendant of the possibility of the imposition of community service deprives the trial court of the authority to impose community service. *State v. Gabriel*, 7th Dist. Mahoning No. 09 MA 108, 2010-Ohio-3151; *State v. Henderson*, 2d Dist. Montgomery No. 24701, 2012-Ohio-3283. Other districts have held that the proper remedy is to remand for a limited resentencing concerning the imposition of court costs. *State v. Ysrael*, 1st Dist. Hamilton Nos. C-100622, C-120263, 2013-Ohio-1125; *State v. Rosino*, 6th Dist. Wood No. WD-12-038, 2013-Ohio-3373; *State v. Debruce*, 9th Dist. Summit No. 25574, 2012-Ohio-454; *State v. Taylor*, 11th Dist. Portage No. 2011-P-0090, 2012-Ohio-3890; *State v. Weathers*, 12th Dist. Butler No. CA2012-02-036, 2013-Ohio-1104; and *State v. Jeffery*, 2d Dist. Montgomery No. 24916, 2013-Ohio-504 (distinguishing the holding in *Henderson* as an unusual situation due to the sentence of life without the possibility of parole that the defendant had in that case). We are persuaded by the logic of the majority of the districts and hold that the appropriate remedy is to remand the matter for a limited resentencing addressing solely the imposition of court costs. The fourth assignment is sustained.

{¶40} Accordingly, the judgment of the Court of Common Pleas of Allen County is affirmed in part and reversed in part. The matter is remanded for a limited resentencing solely on the issue of the imposition of court costs.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW, J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jlr**